■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REGINALD BARNHILL, Appellant.—Levine, J. Appeal from a judgment of the County Court of Schenectady County (Harrigan, J.), rendered March 7, 1990, upon a verdict convicting defendant of the crimes of robbery in the second degree and attempted robbery in the second degree.

Defendant and codefendant Robert Mitchell were indicted on one count of attempted murder in the second degree, four counts of robbery in the first degree, two counts of robbery in the second degree, four counts of attempted robbery in the first degree and two counts of attempted robbery in the second degree, arising out of an incident which occurred during the early morning hours of May 1, 1989 in the Hamilton Hill area of the City of Schenectady, Schenectady County. Defendant and Mitchell were convicted of one count of robbery in the second degree and one count of attempted robbery in the second degree, and were acquitted on the remaining counts. Mitchell's conviction was affirmed on appeal *(People v Mitchell,* 180 AD2d 906, *lv denied* 79 NY2d 1004).

There was evidence adduced by the People at the trial that four individuals, Jeffrey Dow, George Chambers, Terry McCloud and Charles Young, were driving in Dow's Nissan pickup truck in the vicinity of the intersection of Hamilton Street and Summit Avenue when they were cut off and forced to stop at the curb by a Mazda sedan from which Mitchell and defendant emerged. Defendant was brandishing a shotgun. During the course of the confrontation that followed, Mitchell demanded money from Dow and Chambers, who had been ordered out of the truck, but only obtained money from Chambers. Defendant threatened to kill McCloud and demanded "what was his", according to the testimony of Dow. At this point, Young raised a commotion as he exited from the rear of the truck, protesting about being robbed, and when

defendant's and Mitchell's attention was diverted to him, McCloud, who had remained in the passenger cab of the truck, was able to drive away. The shotgun was discharged in the direction of the truck. Defendant and Mitchell then fled in the Mazda. During the police investigation which followed the prompt report of the incident, the Mazda was observed entering a vacant lot where an object was discarded, later found to be a shotgun seemingly the same as that wielded by defendant during the incident. After a trial, the jury found Mitchell and defendant guilty of robbing Chambers and attempting to rob Dow, and acquitted them of all remaining counts.

Defendant's principal argument on appeal is that Mitchell was the actual perpetrator of the crimes against Chambers and Dow and that the jury's apparent determination of defendant's accessorial responsibility for Mitchell's conduct (see, Penal Law § 20.00) was against the weight of the evidence. In support of this contention, defendant points to Mitchell's testimony that their objective in stopping the pickup truck was to retrieve money McCloud had previously stolen from defendant and that defendant only possessed the shotgun after wresting it from McCloud, who had concealed it in Dow's truck. Defendant also relies upon the absence, in the testimony of Dow and Chambers, of any statement ascribing a role to defendant in the taking or attempted taking of money from them.

We are unpersuaded by defendant's contention on the weight of the evidence issue. McCloud testified that after they were stopped, defendant got out of the Mazda, placed the barrel of the shotgun over the hood of the car pointing generally at the pickup truck and ordered all three occupants of the cab of the truck (McCloud, Chambers and Dow) to get out. Only Chambers and Dow complied. According to McCloud, defendant kept the gun trained at Chambers and Dow while Mitchell went through their pockets for money. This was at most only inferentially contradicted by Dow and Chambers. Moreover, Dow testified that, in the course of the confrontation, defendant struck Young with the butt of the shotgun and ordered him out of the truck. The jury could readily have rejected Mitchell's version of the incident, which was in total conflict with the narratives of Chambers, Dow and McCloud, and could rationally have credited McCloud's account as being the closest to the actual sequence of events. In exercising our exclusive statutory authority to review the weight of the evidence in this case (see, CPL 470.15 [5]), we nevertheless must accord great deference to the jury's superior opportunity

to resolve issues of the credibility of witnesses *(see, People v Bleakley,* 69 NY2d 490, 495). McCloud's testimony and defendant's flight with Mitchell and surreptitious disposal of the shotgun satisfy us that the jury's determination of defendant's accessorial role in the crimes against Dow and Chambers was in accord with the weight of the evidence.

Defendant's remaining point for reversal is that County Court erred in ruling inadmissible the testimony of three witnesses he sought to introduce through an offer of proof hearing. The first of these witnesses was an inmate at the Schenectady County Jail who would have testified that in July 1989, several months after the incident giving rise to the charges herein, Dow introduced him to the use of cocaine and thereafter consumed cocaine with him on several occasions. The stated purposes of introducing this testimony was to contradict Dow's denial, on cross-examination, that he ever purchased or used drugs and to impeach generally Dow's credibility. The second witness was an employee of the Capital District Transportation Authority who would have testified that there was no bus service on April 30, 1989 between the Village of Scotia, Schenectady County, and the Hamilton Hill area in Schenectady. The stated purpose of this testimony was to contradict Chambers' testimony that the reason he was in the Hamilton Hill area on the night of the incident was to find his wife, who had taken a bus from Scotia to Hamilton Hill earlier that day. The third witness was a Schenectady police officer whose assignment was patrol of the Hamilton Hill area. He would have testified that both Dow and Chambers had been observed on various unspecified occasions going in and out of suspected crack cocaine houses, that he had seen Chambers apparently in a state of cocaine intoxication, that Chambers had once told him of "his cocaine use and how he wanted to get off of it", and that Chambers' wife and Dow's girlfriend were prostitutes and the two men were pimps for their respective mates. The stated purpose for this testimony was to contradict the testimony of Dow and Chambers denying, on cross-examination, that they ever used drugs, pimped for their mates or were in the Hamilton Hill area on the night of the incident to purchase drugs, and for the purpose of generally impeaching the credibility of Chambers and Dow.

We agree with County Court's ruling that the foregoing evidence was inadmissible for any of the purposes for which it was offered. None of the testimony offered constituted permissible extrinsic evidence of Dow's or Chambers' bias, hostility or interest *(cf., People v Green,* 156 AD2d 465, *lv denied* 75

NY2d 813). The evidence of Dow's and Chambers' consumption of cocaine was unspecified as to dates, except as to one brief period of Dow's use months *after* the crimes were committed. All of such evidence either lacked probative value or was completely insufficient to show that Dow and Chambers were under the influence of drugs while testifying, or at the time of the events to which they testified, or that their powers of perception or recollection were actually impaired by drug addiction *(see, People v Bellamy,* 97 AD2d 654, 655; *see also, People v Walker,* 116 AD2d 948, 951, *lv denied* 67 NY2d 952; *cf., People v Freeland,* 36 NY2d 518, 525-526). Thus, the only function of the evidence defendant sought to introduce of Chambers' and Dow's use of cocaine and promotion of prostitution was to attack their credibility by showing their vicious, immoral or criminal acts. This kind of impeachment, however, is limited to cross-examination, and may not be established by extrinsic evidence *(see, People v Lyde,* 160 AD2d 817, 818; Fisch, NY Evidence § 458 [2d ed]). In all other respects, the evidence defendant sought to introduce through these witnesses was properly excluded as impeachment testimony on purely collateral matters *(see, People v Canale,* 76 AD2d 1032, 1033; Fisch, NY Evidence § 486 [2d ed]).

Weiss, P. J., Crew III, Mahoney and Harvey, JJ., concur. Ordered that the judgment is affirmed.